## CRAIG *v.* MILLS

(In Banc.   January 26, 1948.)

[33 So. (2d) 801.   No. 36698.]

Jackson, Young, Daniel & Mitchell and George J. Schweizer, Jr., all of Jackson, for appellant.

Alexander, Alexander & Chill, of Jackson, and **Hunt & McEwan,** of Chattanooga, Tenn., for appellees.

Argued orally by **George J. Schweizer, Jr.**, for appellant, and by **Jas. A. Alexander, Sr.**, and **Robert C. Hunt**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This suit was brought by the appellees, Olan Mills and others, as members of the partnership of Olan Mills Portrait Studios, of Chattanooga, Tennessee, to enjoin the appellant, Carl N. Craig, as State Tax Collector of Mississippi, from collecting or attempting to collect for any county outside a municipality, and for any municipality, the privilege taxes provided for in the second paragraph of Section 143, Chap. 137, Laws 1944, known as the Local Privilege Tax Code, and also the privilege taxes provided for under a similar provision of Section 150 of the Privilege Tax Code of 1944 for the Yazoo-Mississippi Delta

Levee District; and also to enjoin the state tax collector from causing the threatened arrest and prosecution of any of the employees of the complainant in this state for failure and refusal to procure a privilege-tax license as a condition precedent to carrying on the activities set forth in the said provision of these two privilege tax codes.

At the hearing a temporary injunction was granted as prayed for after a demurrer interposed by the state tax collector had been overruled; and when he declined to plead further a final decree was rendered making 'the said injunction permanent, which prohibited the said official from collecting any privilege taxes whatsoever under the particular provision of the statutes in question.

Prior to the enactment of these local privilege-tax codes, the state had reserved unto itself the right to levy such taxes upon most of the businesses and occupations therein specified, but the Legislature then saw fit to repeal a great number of the former statutes in that behalf and to substitute therefor the right of these governmental subdivisions, adopting such codes, to levy taxes on the privileges therein mentioned as a means of securing additional revenues for local purposes.

Section 3 of said Chapter 137, Laws 1944, provides, in substance, that any person desiring to engage in any business or exercise any privilege which is enumerated in the said Chapter 137 shall first pay for and obtain from the tax collector of the county, if such business is located outside a municipality, a privilege license authorizing him to engage in such business, and shall likewise obtain such a license from the tax collector of the municipality, if such business is located within a municipality.

Section 143 of said Chapter 137, Laws 1944, provides, when construed in connection with said Section 3 thereof, for the levying of privilege taxes in the following manner, to-wit:

"Upon each person engaged in the business of photography, including any, or all the processes thereof, as follows:

"In municipalities of classes 1 and 2 ............$20.00
"In municipalities of classes 3, 4 and 5 .........$10.00
"In municipalities of classes 6 and 7 and elsewhere
     in the county ...........................$ 5.00

"Upon each person engaged in the business of selling, delivering or handling photographic coupons, certificates, or other devices used as or in exchange on photographs, or making or developing such photographs so procured to be made, the word person herein meaning, or limited to, an individual human being or person taking photographs in this state and developing same outside this state, as follows:

"In municipalities of classes 1 and 2 ............$25.00
"In municipalities of classes 3, 4 and 5 ..........$15.00
"In municipalities of classes 6, 7 and elsewhere in
     in the county .........................$10.00"

The legality of the tax provided for under the second paragraph of the above-quoted statute is challenged on the ground, (1) that it imposes an undue burden on interstate commerce in violation of Article I, Section VIII of the Constitution of the United States, and (2) because the amount of the tax is so unreasonable and discriminatory as to result in the destruction of the appellees' business of taking photographs in this state for development outside of the state, when compared with the tax paid by photographers under the first paragraph of said statute where the photographs are both taken and developed in this state, and that, therefore, the imposition of such tax is in violation of Article IV, Section II, of said Constitution and also the Fourteenth Amendment thereto.

The appellees, as members of the partnership of Olan Mills Portrait Studios, according to the allegations of their bill of complaint herein, maintain permanent studios in Jackson, Vicksburg, and Hattiesburg, Mississippi,

three of our larger municipalities, and in addition thereto they operate in numerous other municipalities, and in counties outside thereof, throughout the state by means of traveling units, which usually consist of two to five men, but in some instances of a larger number. These men canvass a town and solicit appointments to have pictures taken and are immediately followed by a photographer who takes the same—as a local activity in this state. He may or may not be a nonresident of the state so far as the bill of complaint discloses. A fee of 50 cents is collected by the solicitor when the appointment is made and the customer is advised when and where the photographer will take the picture. A hotel room is generally used by the photographer for the purpose of taking the customer's picture, and at which time another 50 cents is collected. Thereupon a negative is made by this photographer and the same is sent either by express or mail to a developing plant of the appellee at Tuscaloosa, Alabama, where proofs are made which are then sent to another representative of the appellees in Mississippi, who notifies the customer by mail of the arrival of such proofs. This representative then submits the proofs to the customer for his approval and takes an order for the number of photographs desired, if any, and thereupon the proofs and order are sent back to the plant at Tuscaloosa for final processing. Upon final development of the photographs thus ordered, the same are mailed from said plant direct to the customer in Mississippi, cash on delivery.

The bill of complaint does not specifically allege that the appellees are "engaged in the business of selling, delivering or handling photographic coupons, certificates, or other devices used as or in exchange on photographs, or making or developing such photographs so procured to be made." But there is filed as an exhibit to the bill of complaint a copy of the written demand made by the state tax collector for the payment of the privilege taxes in question, wherein it is recited that the appellees are so

engaged in business in this state, and the case was proceeded with and the demurrer disposed of as if such allegation had been made, and no point is raised in regard thereto on this appeal.

Thus it is that the case is here on the contention that the appellees are engaged in business in this state in the manner set forth in the second paragraph of the quoted statute. And it is the contention of the state tax collector that the appellees are required to procure and pay for a separate privilege-tax license not only for the photographer who takes the pictures in this state but also for each additional canvasser who solicits the prospective customer to have his photograph taken and arranges for the appointment between him and the photographer for that purpose; and also it would seem that the tax is demanded for the representative of the studios in this state to whom the proofs are later mailed from its plant at Tuscaloosa, Alabama, to be submitted to the customer for approval and for the purpose of obtaining an order for the number of photographs desired.

It appears that the appellees agree with the above-stated interpretation of the state tax collector as to the intention of the Legislature in the enactment of the second paragraph of the said statute, hereinbefore quoted, but they contend that such an interpretation has the effect of imposing an unreasonable and confiscatory tax, and of rendering the said provision of the statute unconstitutional and void for the reasons heretofore stated.

It is to be noted that this statute declares that ''the word person herein meaning, or *limited to,* an individual human being or person *taking photographs* in this state and developing same outside this state'' (Italics ours); and hence the soundness of the contention that the tax applies to each of the several solicitors who canvass the town or county to solicit appointments between the prospective customers and the photographer who actually takes the picture, as well as to the person who later submits to such prospective customer the proofs which

he has received by mail from Tuscaloosa, Alabama, and solicits an order for the photographs which are to be developed at this place outside of the state, to be returned by mail direct to the customer, cash on delivery, is at least very doubtful.

It is also to be observed from the facts hereinbefore stated that neither of these canvassers for appointments with the photographer nor any of those submitting the proofs to the customer for approval and taking the order for the finished product has any part in the actual making of the negatives or the development of the proofs thereof, which work requires the knowledge and skill of experts in that line of endeavor, that is to say, that the employees, other than the photographer, neither take photographs in this state nor develop the same outside of the state. Nor does it appear from the bill of complaint or the exhibit thereto whether or not any of the photographers who take the pictures in this state have any part in the work of developing the same outside the state, or merely cause them to be thus developed, if such fact can be deemed material.

If the construction of this second paragraph of the statute in question, as contended for both by the state tax collector and the Olan Mills Portrait Studios, is to be adopted, then there would be considerable merit in the contention that the total amount of the tax that could be required thereunder would be so excessive, unreasonable, and discriminatory, as against a portrait studio taking pictures in this state and developing the same outside of the state when compared with the single tax required to be paid under the first paragraph of the quoted statute by those who both take and develop photographs in this state, regardless of how many employees may be engaged in all the processes thereof at such a local studio, as to render the tax here in question unconstitutional under Article IV, Section II, and the Fourteenth Amendment of the Constitution of the United States; but, in accordance with the elementary principle that where a statute

is open to two possible interpretations, by one of which the same would be unconstitutional and by the other it would be valid, the courts will adopt the one which will uphold the statute; and, therefore, we should adopt such a construction of the statute here in question as will bring it into harmony with the Constitution, if its language will permit. 11 Am. Jur., pp. 725-728. See also 16 C. J. S., Constitutional Law, Sec. 98, where the rule is stated to the same general effect as follows: "If a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional in whole or in part, or raise grave and doubtful constitutional questions, the court will adopt that construction which, without doing violence to fair meaning of language, will render it valid, in its entirety, or free it from doubt as to its constitutionality, even though the other construction is equally reasonable, or seems the more obvious, natural, and preferable, interpretation."

And it is frequently said in the opinions of the courts that "to doubt the constitutionality of a statute is to resolve every reasonable doubt in favor of its validity." 11 Am. Jur. 725, 726; 16 C. J. S., Constitutional Law, Sec. 98; Stone v. General Electric Contracts Corp., 193 Miss. 317, 7 So. (2d) 811; Russell Inv. Co. v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102; State ex rel. Attorney General v. School Board of Quitman County, 181 Miss. 818, 181 So. 313; Clark v. State, 169 Miss. 369, 152 So. 820; Sinclair v. State, 161 Miss. 142, 132 So. 581, 74 A. L. R. 241; Mississippi State Tax Commission v. Flora Drug Co., 167 Miss. 1, 148 So. 373; State v. Crescent Cotton Oil Co., 116 Miss. 398, 77 So. 185; Cooley, Const. Lim., 7th Ed., p. 252 et seq., and cases cited.

It was said in Russell Investment Corporation v. Russell, supra, on the authority of the cases of Money v. Wood, 152 Miss. 17, 118 So. 357; Mai v. State, 152 Miss. 225, 119 So. 177; Miller v. Sherrard, 157 Miss. 124, 126 So. 903; Chassanoil v. City of Greenwood, 166 Miss. 848,

148 So. 781, Id., 291 U. S. 584, 54 S. Ct. 541, 78 L. Ed. 1004; Tucker Printing Co. v. Board of Supervisors of Attala County, 171 Miss. 608, 158 So. 336,. that ''In determining whether statutes enacted by the legislature transcend the limits imposed by the federal and state constitutions the courts should proceed with the greatest possible caution; and they should never declare a statute void unless its invalidity is in their judgment established beyond reasonable doubt. *They should adopt a construction that will bring it into harmony with the constitution by restricting its application to the legitimate field of legislation,* whenever necessary in order to uphold its constitutionality and carry its provisions into effect.'' [182 Miss. 385, 182 So. 107] (Italics ours.)

The business of taking ánd developing photographs is a specialized calling, trade or profession, and we are of the opinion that under the facts alleged in the bill of complaint the employees of the appellees in this state, other than the photographer, are neither taking nor developing photographs, and that, therefore, the appellees are liable only for the payment of the privilege tax on behalf of their photographer who is engaged in the local activity of taking pictures in this state. Such a construction of the statute would render the appellees liable for one tax under the schedule set forth in the second paragraph of the quoted statute for each county, municipality, and the Levee District, as the case may be, wherein it takes photographs in this state, so as to be on a substantial equality with the photographers who maintain their studios in Mississippi and who both take and develop their photographs here instead of sending them out of the state for the mechanical process of developing the finished product. We can think of no good reason why the appellees should not pay this privilege tax, which is good for an entire year, for the privilege of canvassing a county or municipality and taking pictures in competition with those here who are required to pay their share of ad valorem and other taxes for local purposes. Nor do we

think that the slight difference in the amount of tax required under such construction would constitute an unreasonable discrimination.

Moreover, it will be seen from a casual reading of the statute that a resident photographer would be liable for the same tax as the nonresident photographer if the former should likewise take his photographs in this state and develop the same (or cause them to be developed) outside of the state. No point is either made or argued that appellees' photographer taking photographs in this state, would have to personally develop the same outside the state to come within the purview of the statute here in question. Furthermore the appellees, notwithstanding that they are nonresidents, could avail themselves of the privilege of paying only the tax paid by resident or nonresident photographers provided for in the first paragraph of the quoted statute, if they should both take and develop the photographs in the county, municipality, or the Levee District in which they engage in the local activity of *"taking"* photographs.

The courts cannot require the legislature to specify its reasons for a classification of persons, firms, or corporations for tax purposes, but they should always presume that the legislature acted on legitimate grounds of distinction, if such grounds exist. And one who assails the classification of a statute must carry the burden of showing that it is not based on any reasonable basis. It is presumed that the legislature in making discriminations in classifications in statutes bases them on adequate grounds. State v. Gilmer Grocery Co., 156 Miss. 99, 125 So. 710, cited in Russell Investment Corporation v. Russell, supra.

On the other hand, there would be a discrimination in favor of the appellees as between them and the photographers, whether resident or nonresident, who both take and develop their photographs in this state if the appellees were permitted to go from one county or municipality to another, put on a thorough canvass thereof, take the photographs of all prospective customers who may be

available and then send them out of the state to be developed without their being required to pay any tax whatever except in the three municipalities where they are maintaining a permanent studio, as the appellees are now contending that they have a right to do. This assumed right is the very evil which the statute is designed to prevent.

When the principle announced in the foregoing decisions is applied in the instant case, we think that the conclusion is justified that, aside from the question of a burden on interstate commerce, the constitutionality of the tax herein complained of can be upheld by limiting the liability therefor to the person who practices the calling, trade or profession of taking photographs in the exercise of his skill and training in the operation of the camera and the making of the negative in this state—the original, basic and essential step in making the photographs.

And this brings us to the consideration of the question of whether or not the tax authorities of these local subdivisions may be invested by the legislature with the power to levy and collect a privilege tax on this local activity of taking pictures in this state, where the negative made here is sent outside of the state for the mechanical process of development and to be returned to the customer here in interstate commerce.

Our attention is called to only two decisions of *appellate* courts which have determined the constitutionality of such a statute involving the same circumstances under which the appellees here conduct their business, *as it relates to interstate commerce*, and those are the cases of Lucas v. City of Charlotte, 86 F. (2d) 394, 109 A. L. R. 297, decided by the Fourth Circuit Court of Appeals, and State v. Gray et al., 192 Ark. 1045, 96 S. W. (2d) 447. In neither of those cases are the taxes challenged on the ground that the same are excessive, unreasonable, and discriminatory, but the constitutionality of the law was upheld so far as the commerce clause and other provi-

sions of the Federal Constitution relied on in the case at bar are concerned.

In the case of Lucas v. City of Charlotte, supra, the portrait studio sold in the City of Charlotte a coupon to the prospective customer for a stated sum and collected a part of the sale price, in accordance with the terms of the coupon, and delivered the coupon to the customer, and the customer would then present this coupon at the time and place stated thereon in the city of Charlotte, paying the balance agreed upon, and have his picture taken. The negative of the picture was then sent by United States mail to the home office of the studio, at Saint Paul, where it was developed and proofs made therefrom. When the proofs were made from the negatives taken in Charlotte, they were then sent back by mail to the studio's representative in the City of Charlotte where the customer made his selection, and the proof and the order for purchase were then mailed back to Saint Paul, at which place the picture was finished and sent by mail back to the customer. The Court in upholding the constitutionality of the privilege tax levied in North Carolina, said [86 F. (2d) 396]: "We do not think that the fact that the negatives of the photographs, after the taking, are sent away to Minnesota to be finished makes the transaction one of interstate commerce. The actual work of the photographer is done in the state and the mechanical finishing of the negative does not change the fact that the photographer is carrying on his business in the City of Charlotte and the State of North Carolina."

In the Lucas case the court distinguished the case of Dozier v. State of Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264, as being different on its facts from the case before it, for the reason that in the Dozier case the tax was levied upon the business of enlarging pictures out of the state where the resident customer of the taxing state would furnish to the solicitor of the nonresident studio a picture already made and to be enlarged outside of the state. And the fact that a

charge was made for a portrait frame delivered with the enlarged picture, which the purchaser of the portrait had the option to buy or not to buy at the factory price, did not change the interstate character of the studio's business. No act in the process of the manufacture of the enlarged photograph was performed in the taxing state.

In the case of State v. Gray et al., supra, the Supreme Court of Arkansas, as heretofore stated, upheld the constitutionality of the statute in so far as the tax was claimed to be a burden upon interstate commerce and in so far as it was claimed to be invalid as applying only to nonresidents and to be violative of the Fourteenth Amendment to the Federal Constitution. But the court later in the case of McGriff v. State of Arkansas, Ark., 1947, 204 S. W. (2d) 885, 886, held that the business in which the Olan Mills Portrait Studios was engaged in that state, under almost the identical circumstances in which they are now in business in this state, could not be constitutionally required to pay the exorbitant tax imposed by the Arkansas statute, as a condition precedent to doing such business, for the reason that such a tax was unreasonable and discriminatory as intended thereby to be imposed. But the provisions of that statute were materially different from that now under consideration by us, in that, by its express language, it applied only to nonresident photographers, because "the statute's exception saves from the tax 'those only . . . who have a permanently established business of one year's duration immediately prior to the application for the privilege of doing such business.' "

In addition to the decisions above discussed on the questions here involved, the appellees cite two decisions rendered by district courts of the United States, which strongly tend to support their contentions in the case at bar, and wherein the facts are similar to those involved in the instant case. They are the cases of Woltz Studio

v. City of Mankato,[1] Minnesota, and Sackett v. Knowlton[1] et al., decided during the year 1935. Moreover, the appellees contend that in the case of Lucas v. City of Charlotte, supra, the Fourth Circuit Court of Appeals did not have jurisdiction for the reason that the amount in controversy was less than $3,000. Nevertheless the court decided the case, and we are of the opinion it correctly announced the law when considered in connection with the authorities hereinafter cited.

In 33 Am. Jur., Sec. 29, p. 350, it is said: "In case the same person or corporation is engaged in both interstate and intrastate business, a license tax may be imposed in respect of the intrastate business." Numerous cases of both federal and state supreme courts are therein cited in support thereof.

From its very nature the business of taking photographs is essentially localized in character. The customer, the photographer, and the camera used by him must of necessity be in the state where the photograph is taken. Moreover the tax is not laid upon the transmission of the exposed negative from Mississippi to Tuscaloosa, Alabama, in the instant case, nor upon the return of the finished product to the customer in interstate commerce. It is levied upon the local activity of taking photographs in this state which are to be thereafter developed outside of the state. The interstate commerce does not begin until after the work of the photographer in taking the negative is completed. The taking of such negative is not commerce, but is merely a step in the preparation therefor and which is taken by one engaged in a particular calling or profession in this state. The case is controlled by the reasoning of this Court in the case of Federal Compress & Warehouse Company v. McLean, 166 Miss. 739, 147 So. 325, 326, wherein the Court said that cotton, moving through a local warehouse and compress, "entered

[1] No opinion for publication.

into, and became a part of, interstate commerce, when, but not until, it commenced its journey from this state to another state or country," and also in Stone, Chm. v. Memphis Natural Gas Company, 201 Miss. 670; 29 So. (2d) 268, 270, wherein the Court said "that although a particular activity may be essential to the continued full and unimpeded flow of commerce between the states as regards a particular commodity or other matter of such commerce, yet if that activity is of a substantial character, and is one which actually and distinctly happens in the particular State and must be, and is, protected by that State regardless of the ultimate purpose of the activity, then for the purpose of laying a tax as recompense for the local protection afforded, the State may detach the activity so long as the exaction on account of it is not made a pretext to impose a burden which would have the effect, beyond that which is remote or unsubstantial, to interfere with the national interests."

As supporting the view that such a tax may be imposed upon the business of the appellees, in so far as the local activity of appellees' photographer is concerned, the principles announced in the following cases are likewise applicable: Brown-Forman Co. v. Kentucky, 217 U. S. 563, 573, 30 S. Ct. 578, 54 L. Ed. 883; Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038, 1045-1047; Smith v. Jackson, 103 Tenn. 673, 54 S. W. 981, 47 L. R. A. 416; Willis, Constitutional Laws, p. 312; and Stone v. General Electric Contracts Corp., 193 Miss. 317, 7 So. (2d) 811. Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 58 S. Ct. 736, 82 L. Ed. 1043; McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929.

Nor do we think that the numerous cases cited by the appellees, involving an effort to impose a privilege tax upon "drummers" and on nonresident studios which are

engaged in enlarging pictures, respectively, are controlling in the instant case, for the reason that a ''drummer'' is one who travels from place to place carrying with him samples from which he sells goods to customers to be delivered thereafter and which have been theretofore manufactured, or which are to be thereafter manufactured, entirely outside of the state, and the nonresident portrait studio which is engaged in enlarging pictures merely procures through its representative in another state a photograph already taken by some one else and obtains an order for its enlargement, since in neither instance is there a local activity subject to taxation.

It should be noted that the reasoning of the case of Nippert v. City of Richmond, 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760, 162 A. L. R. 844, furnishes a strong argument in favor of the contention of the appellees on the question of whether or not the tax in question violates the Commerce Clause in the Federal Constitution except for the fact that in that case the tax is upon the act of soliciting in one state in behalf of the seller in another state, instead of being a tax upon a local activity in the taxing state which constitutes the original, basic and essential step in the manufacture of the article to be sold.

From the foregoing facts it would follow that the statute as hereinbefore construed is neither unreasonable and discriminatory nor in violation of the commerce clause or any other provision of the Federal Constitution.

But since the bill of complaint stated grounds for some relief against the excessive demand of the state tax collector in the premises, we are of the opinion the trial court was not in error in overruling the demurrer. However, we think that the cause should be reversed and remanded for the reason that the injunction has the effect of prohibiting said official from collecting or attempting to collect any tax whatsoever from the appellees anywhere in the state except where they maintain their permanent

studios in Jackson, Vicksburg, and Hattiesburg, whereas we are of the opinion that he is entitled to collect a privilege tax for each of their photographers on behalf of any county, municipality, or in the said levee district where said photographers may be engaged in taking photographs in this state and developing (or causing the same to be developed) outside of the state.

Affirmed in part, reversed in part, and remanded.

**Alexander, J.,** took no part in this decision.